IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANA REESE,

    Plaintiff,

v.

GREGORY J. BARRO, PLC,

    Defendant.

CIVIL ACTION NO.
1:04-CV-698-JEC

### ORDER

This case is presently before the Court on plaintiff's Second Motion for Attorney's Fees [18]. Defendant has responded, opposing the awarding of any fees and, alternatively, opposing the actual fee amount claimed by plaintiff's counsel.

### BACKGROUND

Plaintiff brought suit alleging violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"). According to the Complaint, plaintiff had previously had an account with BellSouth, with an alleged balance due of $1191.89. Around January 24, 2004, defendant Barro, the debt collector to whom BellSouth had assigned the account, wrote plaintiff in an effort to collect the balance due. The letter indicated that if plaintiff did not pay the account in full, the defendant might sue, and, if he did so, a "Fulton County

Sheriff" would serve legal papers to this effect.

In the plaintiff's later-filed Complaint, plaintiff indicates that this latter statement was untrue, because the Fulton County Sheriff would not have served the plaintiff as the plaintiff did not live in Fulton County, but instead resided in the contiguous county of Dekalb. (Complaint [1] at ¶¶ 12-16).

Second, around February 23, 2004, a representative of defendant's allegedly telephoned the plaintiff and indicated that if plaintiff did not pay the balance by February 27th, the defendant would garnish her next paycheck. In her later-filed Complaint, plaintiff averred that this statement was untrue because the defendant would have been unable to garnish the plaintiff until the defendant first obtained a judgment. (*Id.* at ¶¶ 17-18.)

On March 11, 2004, plaintiff filed her Complaint alleging the above-described untruthful statements, which plaintiff contended were in violation of the FDCPA. On April 5, 2004, the defendant filed his answer and, on that same date, offered a judgment to the plaintiff of $500, plus costs and attorney's fees to be determined by the court [3,4].

Three days later, on April 8, 2004, the plaintiff filed a notice accepting the defendant's Offer of Judgment [5]. On that same date, plaintiff's counsel filed a motion for statutory attorney's fees [6]. Counsel noted that she had been admitted to practice law on June 29,

2001, which means that counsel had been practicing for approximately 2 years and 8 months at the time that she filed the Complaint in this case. (Fee Aff., attach. to Pl.'s Mot. [6], at ¶ 7.) Counsel also noted that she had banking experience prior to becoming a lawyer and had also been admitted as a Certified Public Accountant in 1996. (Id. at ¶ 4.) Counsel indicated that she had expended 6.5 hours in the representation of her client and she requested that she be paid at the rate of $250 per hour, for a total of $1625.[1] (Id. at ¶17.)

In support of her claimed rate of $250 per hour, plaintiff's counsel notes the 2003 rates imputed to partners at large, Atlanta law firms.[2] Counsel also cites to the rates of three practitioners who focus on consumer litigation and who charge between $150-$250 per hour, as well as to a civil rights attorney who charges $220-$275 per hour. (Id. at ¶ 14.)

Defendant filed a response to plaintiff's motion for attorney's fees, in which defendant requested that the Court deny the plaintiff any attorney's fees. Defendant notes that it viewed this litigation as a nuisance suit and promptly settled the action for a nuisance value of $500. Defendant relies on Farrar v. Hobby, 506 U.S. 103

---

[1] Plaintiff also requested costs and expenses of $268.

[2] Plaintiff cites to the Fulton Daily Reporter, which shows a range of $285-$515 for partners at three large, Atlanta law firms in 2003.

3

(1992) for the proposition that an attorney should not receive statutory attorney's fees when the attorney has accomplished only a *de minimis* result. Defendant contends that a $500 award is *de minimis* and, moreover, that no public interest is served by having an attorney receive fees that are over three times the amount of money that her client actually received in damages. Defendant argues that such a result creates the "windfall for attorneys" that was decried by *Farrar*. (Def.'s Resp. to Mot. for Att'ys Fees [9] at p. 4.)

Plaintiff replied to defendant's response [9] and also filed requests for judicial notice of other actions in which federal judges have awarded her $250 in attorney's fees [10,11,13,14].

Following the above briefing, the Court issued an Order noting that the statute called for an award of attorney's fees, but indicating that, on the pleadings before it, the Court was uncertain what that award should be [17]. Specifically, the Court noted that plaintiff had not replied to defendant's contention that the billing rate of partners at large law firms bore little relation to the rates appropriate for plaintiff, who had been in practice for under three years when she filed this case. (*Id.* at 2.) The Court directed further briefing and evidence from plaintiff concerning the hourly rates of attorneys in the market with comparable skills and experience. (*Id.*)

Following the Court's directive, the plaintiff filed her Second

4

Motion for Attorneys Fees [18] in support of her request for an award of fees at a rate of $250 per hour. She provided, among other things,[3] copies of orders in which federal judges, including the undersigned, had awarded her $250 per hour. She further submitted affidavits of "comparator" attorneys. Specifically, one such attorney, T. Michael Flinn, indicated that he had practiced consumer litigation for 19 years and currently charged $225 per hour and that he believed the typical rate for a consumer advocate to be between $175-$250 per hour. (*Id.* at Ex. 1.) Another attorney, Paula McGill indicated that she had been in practice for ten years and specialized in civil rights and consumer litigation. She indicated that her rate ranged from $220-$300 per hour. (*Id.* at Ex. 2.)

Defendant has responded to plaintiff's Second Motion [20]. Counsel reiterates that plaintiff has filed a nuisance suit, alleging technical violations for which defendant made a business decision to pay a *de minimis* amount to settle the case and thereby avoid incurring more attorney's fees. Defendant contends that the Court will be encouraging plaintiff's counsel to file more such suits if the Court gives counsel a windfall profit on the present action.

---

[3] At the inquiry of the Court as to the rate counsel charged to "paying" clients, counsel attached a retainer agreement for two clients sued by DirectTV essentially for theft of services; this agreement indicated that counsel charged these two clients $200 per hour. (*Id.* at Ex. 8,9)

Defendant, therefore, urges the Court to award no fees. Alternatively, defendant argues that plaintiff's comparator attorneys support defendant's argument that plaintiff's requested hourly rate is too high. That is, defendant notes that Mr. Flynn has been practicing in the area for 19 years and only charges $225 per hour; Ms. McGill has been practicing for ten years and charges $220-$300 per hour. Defendant contends that plaintiff, having only been practicing for less than three years, should not command the same rate as, much less a higher rate than, these two attorneys.

**DISCUSSION**

Defendant has cited to no case in which a court has refused to award attorneys fees in an FDCPA case, and the Court knows of no such case. The plaintiff received some relief in the litigation and the Court concludes that it should award some attorney's fees to her counsel. Admittedly, were FDCPA cases to be valued based on their actual worth to the client, a fee system analogous to contingency fee arrangements might make more sense. As a typical contingency rate does not exceed 40%, it might be reasonable to award plaintiff's counsel $200 in attorney's fees (40% of the settlement), in addition to the $500 that her client accepted to settle the case. Yet, Congress, which sought to deter misconduct by debt collectors, has not prescribed such a system. Instead, the case law indicates that the Court should determine a reasonable fee based on the lodestar

method, meaning that the Court should set a reasonable hourly rate and then multiply that rate against the number of hours expended by counsel.

In addition, the offer of judgment, accepted by plaintiff, indicated that attorney's fees and expenses would be determined by the Court and would be awarded in addition to the $500 for which the case was being settled. The Court agrees with plaintiff that it would constitute "bait and switch" to deprive the plaintiff's counsel of any attorney's fees under these circumstances.

Further, the Court agrees that plaintiff's stated number of hours--6.5 hours--are reasonable. The only remaining question is what hourly rate would be reasonable to award to plaintiff's counsel, who had been a practicing attorney for less than three years when this case was filed. Plaintiff's counsel cites several orders from judges in this district, including the undersigned, in which she has received a $250 per hour rate. Yet, except for its own Order, this Court does not know the circumstances underlying the issuance of these orders. Typically, if there is no opposition to a requested rate, a court will not act as an advocate and *sua sponte* reduce the requested rate; if the defendant has defaulted, as happened in the previous case before the undersigned cited by plaintiff as Ex. 6, a Court will frequently accede to the requested rate, unless that rate is clearly out of line. None of those rulings are helpful in

7

deciding what rate to award when the requested rate is contested, however, as it is in this case.

As to plaintiff's original comparison of herself to partners in large Atlanta law firms, the Court finds such a comparison to be greatly inapt, as the latter will have been in practice for a minimum of 7-10 years before even being considered for partnership and will typically be handling sophisticated and complex litigation. As noted, the plaintiff had only been practicing for less than three years when she filed this complaint. More apt are the consumer litigators whose rates plaintiff has cited in comparison. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (court must determine hourly rates in the relevant market <u>for those with comparable skills, experience, and reputation</u>) (emphasis added). One of these attorneys has been practicing 19 years, but, at the time of the affidavit, he charged only $225, not the $250 rate that plaintiff's counsel seeks. The low end of the other attorney's rate is $220, but, again, she has been practicing for ten years.

Extrapolating from the above rates and considering the simplicity of the case presently before this Court, the Court concludes that **$150 per hour** is a reasonable rate to compensate counsel for work done in 2004. Multiplying that rate against the 6.5 hours that she expended, the resulting attorney's fee is **$975**. In addition, plaintiff shall be awarded **$268** in costs, for a **total award**

8

of $1,243. The award of $975 in an attorney's fee means that plaintiff's counsel will have received, for her work, almost double the amount that the client received for her damages. This result seems quite fair to plaintiff's counsel.

## CONCLUSION

For the above reasons, the Court **GRANTS** plaintiff's Second Motion for Attorney's Fees [18] and awards **$975 in attorney's fees and $268 in costs and expenses, for a total of $1,243.**

SO ORDERED, this 29 day of March, 2006.

/s/ Julie Carnes
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE